# EXHIBIT A

Chapter 18.37 - Inclusionary Housing

18.37.010 - Purpose

A. The purpose of this chapter is to enhance the public welfare by establishing policies which require the development of housing affordable to households of 35% AMI, very low, low, median and moderate incomes, help meet the City's regional share of housing needs, and implement the goals and objectives of the general plan and housing element.

B. The adoption of a citywide inclusionary housing program will also assist in alleviating the use of available residential land solely for the benefit of households that are able to afford market rate housing, because such market-rate development will be required to contribute to the provision of inclusionary housing for the entire East Palo Alto community, and will assist in alleviating the impacts of the service needs of households in new market-rate residential development by making additional inclusionary housing available.

C. The City Council also desires to provide and maintain affordable housing opportunities in the community through an inclusionary housing program for both ownership and rental housing, and, in furtherance of that goal, includes rental inclusionary housing requirements in this chapter consistent with Government Code Sections 65850(g) and 65850.01.

D. The City Council also desires to provide the residential development community with alternatives to construction of the inclusionary units on the same site as the market rate residential development. Therefore, this chapter includes options from which a developer may apply to the City Council to approve an alternative to the construction of inclusionary units on the same site as the market rate residential development.

(Ord. No. 425, § 2, 11-19-2019)

18.37.020 - Definitions

The definitions set forth in this section shall govern the application and interpretation of this chapter. Words and phrases not defined in this section shall be interpreted so as to give this chapter its most reasonable application.

A. **"35% AMI Income Household"** are those households whose income does not exceed 35 percent of the area median income, adjusted for family size and as published annually by the City of East Palo Alto.

B. **"Affordable Rent"** means the maximum monthly rent, including an allowance for tenant paid utilities, calculated at the specified income level as follows:

1.

35% AMI income households: one-twelfth of 30 percent of 35 percent of area median income adjusted for family size appropriate for the unit or market rent, whichever is less.

2. Very low-income households: one-twelfth of 30 percent of 50 percent of area median income adjusted for family size appropriate for the unit or market rent, whichever is less.

3. Low-income households: one-twelfth of 30 percent of 60 percent of area median income adjusted for family size appropriate for the unit or market rent, whichever is less.

C. **"Affordable Sales Price"** means the maximum purchase price that will be affordable to the specified household at the specified income level as follows:

1. Median-income households: one-twelfth of 30 percent times 70 percent of area median income adjusted for family size appropriate for the unit.

2. Moderate-income households: Not be less than 28 percent of the gross income of the household, nor exceed one-twelfth of 35 percent times 110 percent of area median income adjusted for family size appropriate for the unit.

The affordable sales price shall include a reasonable down payment, and monthly housing payments (including interest, principal, mortgage insurance, property taxes, homeowner's insurance, homeowner's association dues, and a reasonable allowance for property maintenance, repairs, and utilities), all as determined by the City.

D. **"Applicant"** or **"Developer"** means a person, persons, or entity that applies for a residential development and also includes the owner or owners of the property if the applicant does not own the property on which residential development is proposed.

E. **"Approval Body"** means the body with the authority to approve the proposed residential development.

F. **"Area Median Income"** means the annual median income for San Mateo County, adjusted for household size, as published periodically in the California Code of Regulations, Title 25, Section 6932, or its successor provision, or as established by the City of East Palo Alto in the event that such median income figures are no longer published periodically in the California Code of Regulations.

G. **"Building Permit"** includes full structural building permits as well as partial permits such as foundation-only permits.

H. **"Common Ownership or Control"** refers to property owned or controlled by the same person, persons, or entity, or by separate entities in which any shareholder, partner, member, or family member of an investor of the entity owns ten percent (10%) or more of the interest in the property.

I. **"Construction Phase"** means either:

1.

The area included within one approved tentative subdivision map for residential development where a single final map implements the entire approved tentative map;

    2. The area included within each separate final map for residential development where multiple final maps implement the entire approved tentative map; or

    3. An area designated as a construction phase in an approved inclusionary housing plan.

J. **"Contiguous Property"** means any parcel of land that is:

    1. Touching another parcel at any point;

    2. Separated from another parcel at any point only by a public right-of-way, private street or way, or public or private utility, service, or access easement; or

    3. Separated from another parcel only by other real property of the applicant which is not subject to the requirements of this chapter at the time of the planning permit application by the applicant.

K. **"Density Bonus Units"** means dwelling units approved in a residential development pursuant to California Government Code Section 65915 et seq., and Chapter 18.36 of the East Palo Alto Municipal Code that are in excess of the maximum allowable residential density otherwise permitted by the City of East Palo Alto.

L. **"First Approval"** means the first of the following approvals to occur with respect to a residential development after the effective date of this chapter: planning permit or building permit.

M. **"Housing Element"** means the then-current Housing Element of the City's General Plan prepared in accordance with state housing law (California Government Code Section 65580 et seq.).

N. **"Housing Fund"** means a fund or account designated by the City to maintain and account for all monies received pursuant to this chapter.

O. **"Inclusionary Housing Agreement"** means an agreement in conformance with Section 18.37.090.B of this chapter between the City and an applicant, governing how the applicant shall comply with this chapter.

P. **"Inclusionary Housing Guidelines"** means any requirements for implementation and administration of this chapter adopted by the City Manager in accordance with Section 18.37.090.D of this chapter.

Q. **"Inclusionary Housing Plan"** means a plan containing all of the information specified in and submitted in conformance with Section 18.37.090.A of this chapter, specifying the manner in which inclusionary units will be provided in conformance with this chapter and any adopted inclusionary housing guidelines.

R. **"Inclusionary unit"** means a dwelling unit required by this chapter to be affordable to 35% AMI, very low, low, median or moderate-income households and subject to recorded affordability restrictions.

S. **"Low-Income Households"** are those households whose income does not exceed 60 percent of the area median income, adjusted for family size and as published annually by the City of East Palo Alto.

T. **"Market Rate Unit"** means a new dwelling unit in a residential development that is not an inclusionary unit subject to recorded affordability restrictions that meet the requirements of this Chapter.

U. **"Median-Income Households"** are those households whose income does not exceed 80 percent of the area median income, adjusted for family size and as published annually by the City of East Palo Alto.

V. **"Moderate-Income Households"** are those households whose income does not exceed 120 percent of the area median income, adjusted for family size and as published annually by the City of East Palo Alto.

W. **"Ownership Residential Development"** means any residential development that includes the creation of one or more additional dwelling units that may be sold individually. A residential ownership development also includes the conversion of a residential rental development to a residential ownership development pursuant to Chapter 18.66 of the East Palo Alto Municipal Code. If dwelling units are approved with a condominium map but are not yet eligible to be sold individually, such development shall be considered a rental residential development subject to the requirements of Section 18.37.050.A.2 until such time as it converts to an ownership residential development, at which time the development shall be subject to the requirements of Section 18.37.050.A.1.

X. **"Planning Permit"** means any discretionary approval of a residential development including, but not limited to, a general or specific plan adoption or amendment, rezoning, tentative map, parcel map, conditional use permit, variances, design review, or coastal development permit.

Y. **"Rental Residential Development"** means any residential development that creates one or more additional dwelling units that cannot be lawfully sold individually in conformance with the Subdivision Map Act.

Z. **"Residential Development"** means any development for which a planning permit or building permit is required that includes:

   1. The creation of one or more additional dwelling units;

   2. Conversion of nonresidential uses to dwelling units; or

   3. The conversion of a use from a residential rental development to a residential ownership development.

AA. **"Very Low-Income Household"** are those households whose income does not exceed 50 percent of the area median income, adjusted for family size and as published annually by the City of East Palo Alto.

(Ord. No. 425, § 2, 11-19-2019)

18.37.030 - Applicability

The provisions of this chapter shall apply to:

A. All residential development except for any residential development exempt under Section
   18.37.040; and

B. All residential development and contiguous properties that are under common ownership or
   control.

(Ord. No. 425, § 2, 11-19-2019)

18.37.040 - Exemptions

A. The following residential developments shall be exempt from the provisions of this chapter:

   1. Residential developments which are developed in accordance with the terms of a
      development agreement adopted by ordinance pursuant to the authority and provisions of
      California Government Code Section 65864 et seq., and that is executed prior to the effective
      date of the ordinance codified in this chapter, provided that such residential developments
      shall comply with any inclusionary housing requirements included in the development
      agreement or any predecessor ordinance in effect on the date the development agreement
      was executed.

   2. Residential developments exempted by California Government Code Section 66474.2 or
      66498.1, provided that such residential developments shall comply with any predecessor
      ordinance, resolution, or policy in effect on the date the application for the development was
      deemed substantially complete.

   3. Residential developments for which a building permit has been issued and substantial work
      has been completed in good faith reliance on the permit no later than the effective date of
      this chapter, provided that such residential developments shall comply with any predecessor
      ordinance, resolution, or policy in effect on the date the application for the development was
      approved.

B. **Planning permit expiration.** Upon the expiration of any planning permit, and unless otherwise
   exempted, the residential development shall be subject to the inclusionary housing requirements
   of this chapter, and shall not proceed until such time as an inclusionary housing plan is approved
   in conjunction with any other required planning permit or amendment thereto. The provisions of
   this chapter shall also apply to any residential development which is granted a discretionary
   extension of a planning permit beyond its initial term, to the extent consistent with state law.

(Ord. No. 425, § 2, 11-19-2019)

18.37.050 - Inclusionary Housing Requirement

All new residential developments, unless exempt under Section 18.37.040, and contiguous property under common ownership and control shall include inclusionary units.

A. **On-site inclusionary requirement.** Unless exempted from this chapter, or unless an alternative is approved as described in Section 18.37.080, residential developments proposing five or more dwelling units shall provide 20 percent of the dwelling units in the residential development as inclusionary units upon the same site as the residential development as follows:

1. **Ownership residential development.** The applicant shall provide:

   a. 50 percent of the inclusionary units in the residential development available at an affordable sales price to median-income households.

   b. 50 percent of the inclusionary units in the residential development available at an affordable sales price to moderate-income households.

2. **Rental residential development.** The applicant shall provide:

   a. 25 percent of the inclusionary units in the residential development available at an affordable rent to 35% AMI income households.

   b. 50 percent of the inclusionary units in the residential development available at an affordable rent to very low-income households.

   c. 25 percent of the inclusionary units in the residential development available at an affordable rent to low-income households.

   In the event only one inclusionary unit is required, or the inclusionary requirement results in a fraction that does not evenly divide by the percentages required above, inclusionary units shall first be provided at the lower required affordability level.

B. **Residential developments with fewer than five dwelling units.** Unless exempted from this chapter, or unless an alternative is approved as described in Section 18.37.080 of this chapter, residential developments proposing fewer than five dwelling units shall, at the applicant's option, either provide one inclusionary unit or pay a fee to the City in-lieu of constructing the inclusionary unit within the residential development. In-lieu fees may be established from time-to-time by resolution of the City Council or may be determined for a specific residential development through the preparation of an affordability gap analysis that will determine the difference between the inclusionary sales price or rent and the fair market rate price for the unit. If the applicant elects to pay an in-lieu fee, no building permit shall be issued by the City for any market rate unit in the residential development until all in-lieu fees for the residential development have been paid to the City. Prior to recordation of any final or parcel map for the development, notice of this requirement shall be recorded against each lot in the

subdivision. The applicant shall provide specific written notice to any purchaser of any dwelling unit prior to the acceptance of any offer to purchase, and shall obtain executed acknowledgment of the receipt of such notice, that purchaser shall not have any right to occupy the dwelling unit until such time as all in-lieu fees owing for the residential development are paid to the City. All in-lieu fees shall be deposited in the housing fund described in Section 18.37.110.

    C. **Calculating the number of inclusionary units.**

        1. Calculations of the number of inclusionary units required by this section shall be based on the number of dwelling units in the residential development, excluding any density bonus units.

        2. In computing the total number of inclusionary units required in a residential development, fractions of an inclusionary unit shall be provided by the payment of an in-lieu fee as established in Section 18.37.050.B.

        3. When a residential development includes both ownership and rental dwelling units, the provisions of this chapter that apply to ownership residential development shall apply to that portion of the development that consists of ownership dwelling units, while the provisions of this chapter that apply to rental residential development shall apply to that portion of the development that consists of rental dwelling units.

    D. **Common ownership and control.** An applicant for a planning permit shall not avoid the requirements of this chapter by submitting piecemeal planning permit applications. At the time of the application for first approval for the residential development, the applicant shall identify all contiguous property under common ownership and control. The applicant shall not be required to construct dwelling units upon the contiguous property at the time of the application for first approval; however, the applicant shall be required to include the contiguous property under common ownership or control in its inclusionary housing plan. The inclusionary housing agreement shall be recorded against the residential development and all contiguous property under common ownership or control and shall require compliance with this chapter upon development of each contiguous property at such time as there are planning permit applications that would authorize a total of five or more residential units for the residential development and the contiguous property under common ownership or control.

(Ord. No. 425, § 2, 11-19-2019)

18.37.060 - Inclusionary Housing Standards and Incentives

    A. Inclusionary housing units included in a residential development resulting from the conversion of a use from a residential rental development to a residential ownership development shall be considered units resulting from the application of the below market rate housing program

provisions pursuant to Section 14.24.090.B of the City's Municipal Code for purposes of determining the affordable housing mitigation fee required pursuant to Section 14.24.090, provided, however, the provision of inclusionary units pursuant to this Chapter shall not relieve any applicant from the obligation to pay the affordable housing mitigation fee required pursuant to Section 14.24.090.

B. **Construction appearance and quality.** Inclusionary units shall be comparable in exterior appearance and overall quality of construction to market-rate units in the same housing development. Interior finishes, features, and amenities may differ from those provided in the market rate units, so as long as the finishes, features, and amenities are durable, of good quality, compatible with the market rate units, and consistent with contemporary standards for new housing.

C. **Bedroom Mix and Unit Size.** The number of bedrooms and the size of the inclusionary units shall be comparable to or greater than the average number of bedrooms and average size of the market-rate units consistent with any adopted inclusionary housing guidelines.

D. **Location.** The inclusionary units shall be located so as not to create a geographic concentration of inclusionary units within the residential development.

E. **Amenities.** The inclusionary units shall have the same amenities as the market rate units included within the affordable rent or affordable sales price for the inclusionary unit. For example, residents of the inclusionary units shall have the same access to and enjoyment of common open space, parking, storage, and other facilities in the residential development, and residents of the inclusionary units shall not be charged more than affordable rents or affordable sales prices as for the use of such facilities and amenities.

F. **Density bonus.** The developer of a residential development providing all required inclusionary units upon the same site as the market-rate units may, at the developer's sole option and concurrently with the submittal of the inclusionary housing plan, submit a written request for a density bonus, waivers, modification of parking standards, or other regulatory incentives pursuant to Government Code Section 65915 et seq., and the provisions of Chapter 18.36 of the East Palo Alto Municipal Code, if the residential development meets all of the applicable requirements to qualify for a density bonus in Government Code Section 65915.

(Ord. No. 425, § 2, 11-19-2019)

18.37.070 - Timing of Construction of Inclusionary Units

All required inclusionary units shall be made available for occupancy concurrently with the market rate units. For the purposes of this subsection, "concurrently" means one of the following:

A. The City may not issue building permits for more than fifty percent (50%) of the market rate units until it has issued building permits for all of the inclusionary units, and the City may not approve any final inspections or certificates of occupancy for more than fifty percent (50%) of

the market rate units until it has issued final inspections or certificates of occupancy for all of the inclusionary units.

    B. In-lieu fees, if required, have been paid.

    C. The applicant has met, or made arrangements satisfactory to the City to meet, an alternative requirement as permitted by Section 18.37.080.

(Ord. No. 425, § 2, 11-19-2019)

18.37.080 - Developers' Alternative Compliance Options

    A. Unless otherwise specified, if the developer applies for, and the City Council approves, any of the compliance options in Paragraphs B through D of this section, the inclusionary housing requirement shall be increased by five percent (5%) over the inclusionary housing requirement for projects with five or more units as described in Section 18.37.050.A of this chapter, as shown below.

        1. **Ownership residential development.** 13 percent of the dwelling units in the residential development available at an affordable sales price to median-income households and 12 percent of the dwelling units in the residential development available at an affordable sales price to moderate-income households.

        2. **Rental residential development.** 7 percent of the dwelling units in the residential development available at an affordable rent to 35% AMI income households, 12 percent of the dwelling units in the residential development available at an affordable rent to very low-income households, and 6 percent of the dwelling units in the residential development available at an affordable rent to low-income households.

The compliance options in Paragraphs B through D of this section do not qualify the residential development for a density bonus or other regulatory incentives unless the dedication of land conforms to the provisions of Government Code Section 65915(g).

    B. The inclusionary housing requirement in Section 18.37.050.A as increased in Paragraph A of this Section may be satisfied by the payment of a fee to the City in-lieu of constructing the inclusionary units within the residential development. In-lieu fees may be established from time-to-time by resolution of the City Council or may be determined for a specific residential development through the preparation of an affordability gap analysis that will determine the difference between the inclusionary sales price or rent and the fair market rate price for the unit. No building permit shall be issued by the City for any market rate unit in the residential development until all in-lieu fees for the residential development have been paid to the City. Prior to recordation of any final or parcel map for the development, notice of this requirement shall be recorded against each lot in the subdivision. The developer shall provide specific written notice to any purchaser of any dwelling unit prior to the acceptance of any offer to purchase, and shall

obtain executed acknowledgment of the receipt of such notice, that purchaser shall not have any right to occupy the dwelling unit until such time as all in-lieu fees owing for the residential development are paid to the City. All in-lieu fees shall be deposited in the housing fund described in Section 18.37.110.

C. **Off-site construction of inclusionary units.** The applicant, or an entity controlled by the applicant, or another entity that has entered into an agreement with the applicant to provide inclusionary housing, which agreement is subject to City review and approval, may propose to construct the inclusionary units required by Section 18.37.050 as increased in Paragraph A of this Section on another site. Two or more applicants may also jointly propose off-site construction of inclusionary units on a single site. The City may grant a credit for off-site construction if the proposal meets all of the following conditions:

1. Off-site inclusionary units shall comply with the standards defined in Sections 18.37.060.A—D and be consistent with any adopted inclusionary housing guidelines;

2. Financing or a viable financing plan, which may include public funding, shall be in place for the off-site inclusionary units;

3. The off-site location is suitable for the proposed inclusionary housing, consistent with any adopted inclusionary housing guidelines and the Housing Element, and will not tend to cause residential segregation; and

4. Construction of the off-site inclusionary units may not have commenced prior to the first approval of the residential development.

Final inspections for occupancy of the market-rate units will be granted only after building permits for the off-site inclusionary units related to those market-rate units have been issued, unless the approval body modifies the timing requirements set forth in this subsection. The City may require that completion of off-site inclusionary units be further secured by the applicant's agreement to pay in-lieu fees in the amount due under Section 18.37.080.B of this chapter in the event the off-site units are not timely completed.

D. **Other alternative compliance methods.** A developer may propose an alternative compliance method to provide inclusionary units through other means consistent with any adopted inclusionary housing guidelines. The approval body may approve or conditionally approve such an alternative only if the approval body determines, based on substantial evidence, that such alternative compliance will provide as many or more inclusionary units at the same or lower income levels or will otherwise provide greater public benefit than would provision of the inclusionary units on-site.

(Ord. No. 425, § 2, 11-19-2019)

18.37.090 - Application and Review Procedures

A. **Inclusionary housing plan.**

1. An application for the first approval of a residential development shall include an inclusionary housing plan describing how the development will comply with the provisions of this chapter. As an alternative to compliance with the basic provisions included in Section 18.37.050 of this chapter, an applicant may propose one of the alternatives listed in Section 18.37.080 of this chapter as part of the inclusionary housing plan.

2. Any proposed density bonus, waivers, modification of parking standards, or other regulatory incentives shall be included in the inclusionary housing plan.

3. Any adopted inclusionary housing guidelines may specify the contents of the inclusionary housing plan. No application for a first approval for a residential development may be deemed complete unless an inclusionary housing plan is submitted in conformance with this chapter.

4. The inclusionary housing plan shall be processed concurrently with all other permits required for the residential development. Before the approval body may approve the inclusionary housing plan, the approval body must affirmatively find that the inclusionary housing plan conforms to the requirements set forth in this chapter. A condition shall be attached to the first approval of any residential development to require recordation of the inclusionary housing agreement described in Paragraph B of this Section prior to the approval of any final or parcel map or building permit for the residential development.

5. The approved inclusionary housing plan for a residential development, or for a building phase in a residential development, where phasing has been approved as part of planning permit approvals, may be amended prior to issuance of any building permit for the residential development or building phase, if applicable. A request for a minor modification of an approved inclusionary housing plan may be granted by the City Manager or their designee if the modification is substantially in compliance with the original inclusionary housing plan and conditions of approval. Other modifications to the inclusionary housing plan shall be processed in the same manner as the original plan.

6. Fair Housing and Marketing Plan. The inclusionary housing plan shall describe the applicant's marketing plan, which shall comply with all applicable fair housing laws and shall not discriminate in the sale or rental of inclusionary units on the basis of race, national origin, color, religion, gender, disability, familial status, age, income source, or marital status.

B. **Inclusionary housing agreement.**

1. The applicant shall enter into an inclusionary housing agreement with the City, in a form approved by the City Attorney, to be executed by the City Manager or their designee, to ensure that all the requirements of this chapter are satisfied. The inclusionary housing agreement shall be recorded against the residential development (and contiguous property

under common ownership and control in accordance with Section 18.37.050.D or any off-site development sites if an alternative is approved pursuant to Section 18.37.080.C) prior to approval of any final or parcel map, or issuance of any building permit, whichever occurs first.

2. The inclusionary housing agreement shall specify the number, type, location, size, and phasing of all inclusionary units, provisions for income certification and screening of potential purchasers or renters of units, and resale control mechanisms, including the financing of ongoing administrative and monitoring costs, consistent with the approved inclusionary housing plan and any adopted inclusionary housing guidelines, as determined by the city manager or designee.

3. In selecting households for the inclusionary units in accordance with this chapter, the inclusionary housing agreement shall specify that preference shall be given as described in the inclusionary housing guidelines, if any.

C. The City Council, by resolution, may establish fees for the ongoing administration and monitoring of the inclusionary units, which fees may be updated periodically, as required.

D. The City Council hereby authorize the City Manager to adopt inclusionary housing guidelines to implement this chapter.

(Ord. No. 425, § 2, 11-19-2019)

18.37.100 - Continued Affordability

A. All inclusionary units shall remain affordable to the targeted income group in perpetuity.

B. Any adopted inclusionary housing guidelines may include standard documents such as a resale restriction, deed of trust, or regulatory agreement, for execution by the City Manager or their designee, in a form approved by the City Attorney, to secure the continued affordability of the inclusionary units approved for each residential development, provide ongoing maintenance obligations, define rent and sale price increase procedures, and provide formulas for how resale prices for ownership inclusionary units are calculated, including the ability for homeowners to capture some or all of the depreciated value of capital improvements they made to the inclusionary unit. Such document(s) shall be recorded against the residential development, all inclusionary units as applicable, and any site subject to the provisions of this chapter.

C. Any eligible household that occupies an inclusionary unit must occupy that unit as its principal residence, unless otherwise approved in writing for rental to a third-party eligible household for a limited period of time due to household hardship, as may be specified in any adopted inclusionary housing guidelines.

D. No household may begin occupancy of an inclusionary unit until the household has been determined to be eligible to occupy that unit by the Community and Economic Development Director or that person's designee. Any adopted inclusionary housing guidelines may establish

standards for determining household income, affordable housing cost, provisions for continued monitoring of tenant eligibility, and other eligibility criteria.

E. Officials, employees, or consultants of the City, members of city boards and commissions, and the applicant and the applicant's officials shall comply with all applicable laws, regulations, and policies relating to conflicts of interest as to their eligibility to develop, construct, sell, rent, lease, occupy, or purchase an inclusionary unit. Any adopted inclusionary housing guidelines shall include conflict of interest provisions relating to the administration of this chapter and the eligibility of persons to occupy inclusionary units.

(Ord. No. 425, § 2, 11-19-2019)

18.37.110 - Housing Fund

A. All in-lieu fees, promissory note repayments, or other funds collected under this chapter shall be deposited into the City's Housing Fund.

B. The moneys in the Housing Fund and all earnings from investment of the moneys in the Fund shall be expended exclusively to provide rental housing affordable to low income households (or below), ownership housing affordable to moderate-income households (or below), and any special needs populations in the City, consistent with the goals and policies contained in the City's Housing Element, and for administration and compliance monitoring of the inclusionary housing program, as approved by the City Council.

(Ord. No. 425, § 2, 11-19-2019)

18.37.120 - Waiver

A. Notwithstanding any other provision of this chapter, the requirements of this chapter may be waived, adjusted, or reduced by the approval body based upon a showing that applying the requirements of this chapter would result in an unconstitutional taking of property or would result in any other unconstitutional result.

B. Any request for a waiver, adjustment, or reduction under this section shall be submitted to the City concurrently with the inclusionary housing plan. The request for a waiver, adjustment, or reduction shall set forth in detail the factual and legal basis for the claim.

C. The request for a waiver, adjustment, or reduction shall be reviewed and considered in the same manner and at the same time as the inclusionary housing plan.

D. In making a determination on an application for waiver, adjustment, or reduction, the applicant shall bear the burden of presenting substantial evidence to support the claim. The City may assume each of the following when applicable:

1. That the applicant will provide the most economical inclusionary units feasible, meeting the requirements of this chapter and any adopted inclusionary housing guidelines; and

2. That the applicant will benefit from the incentives for the residential development as described in this chapter and elsewhere in the City Code.

E. The waiver, adjustment or reduction may be approved only to the extent necessary to avoid an unconstitutional result, after adoption of written findings, based on substantial evidence, supporting the determinations required by this section. If a reduction, adjustment, or waiver is granted, any change in the residential development shall invalidate the reduction, adjustment, or waiver, and a new application shall be required for a reduction, adjustment, or waiver pursuant to this section.

(Ord. No. 425, § 2, 11-19-2019)

18.37.130 - Enforcement

A. The City Attorney shall be authorized to enforce the provisions of this chapter and all inclusionary housing agreements, regulatory agreements, and all other covenants or restrictions placed on inclusionary units, by civil action and any other proceeding or method permitted by law.

B. Failure of any official or agency to fulfill the requirements of this chapter shall not excuse any applicant or owner from the requirements of this chapter. No permit, license, map, or other approval or entitlement for a residential development shall be issued, including without limitation a final inspection or certificate of occupancy, until all applicable requirements of this chapter have been satisfied.

C. The remedies provided for herein shall be cumulative and not exclusive and shall not preclude the City from any other remedy or relief to which it otherwise would be entitled under law or equity.

(Ord. No. 425, § 2, 11-19-2019)

# EXHIBIT B



CITY OF EAST PALO ALTO INCLUSIONARY HOUSING GUIDELINES

## Chapter 4 Rental of Inclusionary Units - Section 18.37.100

**I.    Inclusionary Renter Household Income Limits**

The Developer is responsible for verifying the income eligibility of rental Inclusionary Unit tenants, based on the following methodology and definitions, and for incorporating any applicable Local Preference guidelines for the selection of households into the screening process. Local Preference guidelines shall be provided in a separate document.

1.  Household Composition Definition

    The Household is comprised of all eligible individuals who are currently living together at the same address and will continue to be living together in the Inclusionary Unit.

    New household members cannot be added to the application to income qualify for an Inclusionary Unit after initial submission of an application. In addition, the following individuals are not counted as part of the household: foster children, unborn children, children who are subject to a shared-custody agreement, in which the child resides with the household less than 50% of the time, children being pursued for legal custody or adoption who are not yet living with the household at the time of application, and non-related live-in care-takers.

    To be considered an Eligible Household Member, an individual must comply with the above criteria and meet one of the following criteria:

    i.     Individuals 18 years of age or more (adult household members). Adult household members must be included for income qualification purposes and must appear on the application for rental of an Inclusionary Unit; or

    ii.    Any minor individual who is a dependent listed on the most recent year's tax returns of an adult household member. All household members who are under 18 years of age must be the legal dependent of an adult household member.

2.  Household Income Limits for Renters

    To establish the eligibility of households who intend to occupy the Inclusionary Unit, limits are set on the amount of income households (which includes all Eligible Household Members) can earn. These limits are based on the area median income (AMI) and the number of Eligible Household Members.

    The Ordinance requires that rental Inclusionary Units be rented to 35% AMI, Very Low Income, and Low Income households, as defined below:



CITY OF EAST PALO ALTO INCLUSIONARY HOUSING GUIDELINES

1.) 35% AMI: households whose income does not exceed 35 percent of the area median income, adjusted for family size and as published annually by the City;

2.) Very-Low Income: households whose income does not exceed 50 percent of the area median income, adjusted for family size and as published annually by the City;

3.) Low-Income: households whose income does not exceed 60 percent of the area median income, adjusted for family size and as published annually by the City.

The City of East Palo Alto will annually provide this information on its website.

3. Household Income Definition

Households shall not have an income in excess of 35%, 50% or 60% AMI, depending on the Inclusionary Unit (Household Income Limit). The family size to be used for determining the Household Income Limit is the number of Eligible Household Members.

For income eligibility purposes, the gross annual income (income before deductions or exemptions) received by all Eligible Household Members 18 years of age or older will be considered. The gross annual income is determined by calculating the Household's total current monthly income and then multiplying that total by 12. In the event that current monthly income deviates by more than 15% from the preceding 12- month average, the gross annual income will be determined by combining the preceding half year's gross income with one-half year's gross income at the current level.

4. Types of Income

i.   All wages and salaries, overtime pay, commissions, fees, tips, bonuses, and other compensation for personal services, before payroll deductions;

ii.  The net income from the operation of a business or profession or from the rental of real or personal property (without deducting expenditures for business expansion or amortization of capital indebtedness, or any allowance for depreciation of capital assets);

iii. Interest and dividends (including income from assets – see Excluded Income section below)

iv.  The full amount of periodic payments received from Social Security, annuities, insurance policies, retirement funds, pensions, disability or death benefits, and other similar types of periodic receipts, including any lump sum payment for the delayed start of a periodic payment;



  v.    Payments in lieu of earnings, such as unemployment, disability compensation, and severance pay;

  vi.   The maximum amount of public assistance available to household members, other than the amount of assistance specifically designated for shelter and utilities;

  vii.  Periodic and determinable allowances, such as alimony and child support payments, and regular contributions or gifts received from persons not residing in the home;

  viii. All regular pay, special pay, and allowances of a member of the Armed Forces (whether or not living in the dwelling) who is the head of household or spouse; and

  ix.   Any earned income tax credit to the extent that it exceeds income tax liability.

5.  <u>Excluded Income</u>

  i.    Casual, sporadic or irregular gifts;

  ii.   Amounts that are specifically for, or in reimbursement of, medical expenses;

  iii.  Lump sum additions to household assets (as defined in the Assets section below), such as inheritances, insurance payments (including payments under health and accident insurance and workmen's compensation), capital gains, and settlement for personal losses;

  iv.   Monies received for educational scholarships paid either directly to students, or to the educational institution, as well as amounts paid by the Government to a Veteran of the U.S. Armed Forces for use in meeting the costs of tuition, fees, books, and equipment. Any money received over and above the associated educational costs listed are not exempt and considered income;

  v.    Special pay to a person in the U.S. Armed Forces who is head of household who is deployed and exposed to hostile fire;

  vi.   Foster child care payments;

  vii.  The value of benefits received from the Supplemental Nutrition Assistance Program;

  viii. Payments to volunteers under the Domestic Volunteer Service Act of 1973;

  ix.   Income derived from certain sub-marginal land of the United States that is held in trust for certain Indian tribes;



   x.    Payments or allowances made under the Department of Health and Human Services' Low-Income Home Energy Assistance Program;

   xi.    Payments received from the Job Training Partnership Act.

6.  <u>Determination of Income from Assets</u>

To determine a Household's income eligibility for rental of an Inclusionary Unit, a percentage of the Household's assets (as defined in the Assets section below) shall be added to the Household income only when the total of the Household's assets exceeds the annual Household Income Limit. The amount of income attributed to these assets shall be computed as the higher of:

   a)  The actual annual income generated from the assets; or
   b)  2.5% of all assets in excess of the Household Income Limit.

7.  <u>Assets</u>

Assets are defined as:

   i.    Cash savings, including but not limited to bank accounts, credit union accounts, certificates of deposit, and money market funds;

   ii.    Marketable securities, stocks, bonds, and other forms of capital investment;

   iii.    Inheritance and lump sum insurance payments already received;

   iv.    Settlements for personal or property damage already received;

   v.    Equity in non-residential real estate such as commercial property and unimproved land, except as described as "not considered asset" below; and

   vi.    Other personal property that is readily convertible into cash.

The following are not considered Assets:

   i.    Ordinary household effects including furniture, fixtures, and personal property;

   ii.    Automobiles used for personal use; and



     iii.    Cash, securities, stocks, bonds, and other forms of capital held in a tax deferred retirement plan recognized by the Federal Internal Revenue Service.

## II.    Affordable Rental Rates for Inclusionary Units

Affordable rental rates shall be calculated based on the most recent Household Income Limits published on the City's website and shall not exceed the following:

1.  35% AMI income households: one-twelfth of 30 percent of 35 percent of area median income adjusted for family size appropriate for the unit or market rent, whichever is less.
2.  Very low-income households: one-twelfth of 30 percent of 50 percent of area median income adjusted for family size appropriate for the unit or market rent, whichever is less.
3.  Low-income households: one-twelfth of 30 percent of 60 percent of area median income adjusted for family size appropriate for the unit or market rent, whichever is less.

As defined in Health and Safety Code Section 50052.5 (h), the family size appropriate for the rental Inclusionary Unit is determined by the number of bedrooms. The "family size" is equal to one person greater than the number of bedrooms in the unit. For the purpose of determining the Affordable Rental Rate, each rental Inclusionary Unit shall be adjusted for family size appropriate for the unit based on the number of bedrooms as follows: a studio = one person, one bedroom = two persons, two bedrooms = three persons, three bedrooms = four persons, and four bedrooms = five persons. These apply when there are no other pertinent federal statutes applicable to the rental Inclusionary Units.

However, if federal statues apply (e.g. Tax Credit Allocation Committee - TCAC), the following occupancy guidelines may be used: 1.5 persons per bedroom. Owners may make an election to use the TCAC occupancy guidelines for an entire property.

The Affordable Rental Rate includes all charges related to occupancy of the unit including utilities, parking fees, fees for use of common facilities and other fees and charges. If utilities are paid by tenants of the rental Inclusionary Units, the rent for the rental Inclusionary Units must be adjusted downward for tenant utility expenses, calculated in accordance with the utility allowances published by the San Mateo County Housing Authority annually. In situations where there are multiple affordability restrictions/income or rent limits set by different funding requirements or jurisdictions, the Residential Development must adhere to the strictest requirement so it can meet all of the layering restrictions.

## III.    Occupancy Conditions

CITY OF EAST PALO ALTO INCLUSIONARY HOUSING GUIDELINES



The approved tenant(s) must occupy the rental Inclusionary Unit as their principal residence during the entire term of the lease. If an additional occupant (roommate, family member, etc.) moves into the rental Inclusionary Unit, he/she will be considered part of the existing Household. As a condition for lease or occupancy of a rental Inclusionary Unit, the tenant must be required to provide notice to the owner/property manager, prior to the move in date of a new Household member, and the entire Household (including the new occupant) will be reevaluated to determine eligibility, including Household income requirements.

## IV.    Minimum Household Size

To be eligible for a rental Inclusionary Unit, a household must be of a size at least equal to the number of bedrooms in the rental Inclusionary Unit. For example, in order to rent a two bedroom unit, a Household must have at least two Eligible Household Members. Minimum household sizes for rental Inclusionary Units are as follows: one bedroom unit = one person, two bedroom unit = two persons, three bedroom unit = three persons, four bedroom unit = four persons.

## V. Annual Rent Adjustment

The maximum Affordable Rental Rates will be adjusted annually based on the most recently published Household Income Limits by the City of East Palo Alto, which are derived from the figures published by the Department of Housing and Community Development and San Mateo County. The City or its agent will notify the property owner/property manager of the new rental rates. If the owner chooses to raise rents, the tenant must be given a sixty (60) day notice before any rent increase.

## VI. Ongoing Compliance with Affordability Restrictions

Each Residential Development containing rental Inclusionary Units shall be subject to an annual compliance process, including certification of rent rolls and payment of any City monitoring fees.

## VII. Terms of Tenancy

Rental Inclusionary Unit tenants will be subject to the same conditions of tenancy as other tenants occupying the same property, except for terms provided by the City relating to occupancy, income eligibility, annual recertification, and limits on rents. The initial lease term for the rental Inclusionary Unit will be for one year.

## VIII. Availability of New Inclusionary Units for Lease

A rental Inclusionary Unit may not be leased until the City has approved the unit for occupancy.

## IX. Marketing/Leasing of Inclusionary Units



CITY OF EAST PALO ALTO INCLUSIONARY HOUSING GUIDELINES

The Developer (or designee) is responsible for marketing the rental Inclusionary Units and identifying qualified tenants that meet the income eligibility requirements of the rental Inclusionary Units. The Developer (or designee) shall post the available rental Inclusionary Units on the county-wide listing service site located at http://www.smchousingsearch.org/ or such other site as may be requested by the City.

In reviewing each candidate, the owner or property manager (or designee) may apply the same tenant selection criteria, such as past performance in meeting financial obligations and credit references, as those applied to applicants for non-inclusionary units on the property, except for those standards relating to income eligibility.

The rental Inclusionary Units within a Residential Development shall not be operated at less than ninety percent (90%) occupancy for more than six consecutive months unless market conditions otherwise dictate. The Developer (or designee) shall post each vacant rental Inclusionary Unit as soon as possible but not later than ten (10) days after notice of an impending vacancy and provide advanced notice of the opening of any wait list on the county-wide listing service site located at http://www.smchousingsearch.org/ or such other site as may be requested by the City.

## X. Owner/Manager Certification

Prior to the rental of the first rental Inclusionary Unit on a property, the owner/property manager shall sign a certification of receipt of these Guidelines with a statement of intent to manage the rental Inclusionary Units according to these procedures. Developers shall also submit to the City for approval a management plan consistent with the City's standards for management of affordable units. Subsequent apartment owners/property manager may be asked to sign certifications of receipt of these Guidelines.

## XI. Terms of Affordability Covenants

The deed restrictions applicable to rental Inclusionary Units shall remain in effect in perpetuity. Note that a shorter time period may be required if the Residential Development if required by the program's financing (i.e. Low Income Housing Tax Credits).

# EXHIBIT C

**From:** Wesley Yu <wyu1229@gmail.com>
**Sent:** Wednesday, April 23, 2025 3:14 PM
**To:** Yajaira Morales <ymorales@cityofepa.org>
**Cc:** Housing <housing@cityofepa.org>; Amy Chen <achen@cityofepa.org>; Karen Camacho <kcamacho@cityofepa.org>
**Subject:** Re: Inclusionary Housing Plan and Marketing forms. (1257 Laurel ave)

Ok let's meet Thursday 5/1 at 10am

On Wed, Apr 23, 2025 at 10:29 AM Yajaira Morales <ymorales@cityofepa.org> wrote:

> Good morning Mr. You,
>
> Tuesday morning won't work, but we are available on Thursday, May 1st at 10 am. Please let me know if this works on your end and I will send an invite afterwards.
>
> -Yajaira

---

**From:** Wesley Yu <wyu1229@gmail.com>
**Sent:** Tuesday, April 22, 2025 9:38 PM
**To:** Yajaira Morales <ymorales@cityofepa.org>
**Cc:** Housing <housing@cityofepa.org>; Amy Chen <achen@cityofepa.org>; Karen Camacho <kcamacho@cityofepa.org>

**Subject:** Re: Inclusionary Housing Plan and Marketing forms. (1257 Laurel ave)

Tuesday morning is good

On Tue, Apr 22, 2025 at 9:30 PM Yajaira Morales <ymorales@cityofepa.org> wrote:

> Hi Mr. Yu,
>
> Thank you for your prompt response.
>
> Unfortunately, due to scheduling conflicts, we are unable to meet this week. Could you please share your availability for next week? We will do our best to accommodate your schedule.

Just a quick note that I've moved the Vice Mayor, City Manager, City Attorney, and the Planning and Building Division to Bcc to help focus on your schedule and keep the conversation streamlined.

Thanks,

-Yajaira

**From:** Wesley Yu <wyu1229@gmail.com>
**Sent:** Tuesday, April 22, 2025 5:06 PM
**To:** Yajaira Morales <ymorales@cityofepa.org>
**Cc:** Mark Dinan <mdinan@cityofepa.org>; Housing <housing@cityofepa.org>; Alvin Jen <ajen@cityofepa.org>; Janet Nunez-Aguilar <jnunez@cityofepa.org>; Melvin Gaines <mgaines@cityofepa.org>; Karen Camacho <kcamacho@cityofepa.org>; Amy Chen <achen@cityofepa.org>; John Le <jle@cityofepa.org>
**Subject:** Re: Inclusionary Housing Plan and Marketing forms. (1257 Laurel ave)

Hello Yajaira,
I understand the impact fees are not the same as inclusionary housing fees, but I am actually wondering about the legality of affordable housing deed restrictions on ADUs. Per my understanding, an inclusionary unit has an affordable housing deed restriction on it, and according to page 22 of the ADU handbook from California Department of Housing and Community Development (attached below), ADUs are exempt from affordable housing deed restrictions.

I am available for a meeting with you and Amy Chen these dates:

Wed April 23 from 1-3PM
Thurs April 24 from 9-11AM
Friday April 25 10-12PM

Hope to meet soon!

On Tue, Apr 22, 2025 at 3:08 PM Yajaira Morales <ymorales@cityofepa.org> wrote:

> Good afternoon, Vice Mayor,
>
> I hope this message finds you well and thank you for your question.
>
> I wanted to clarify an important point regarding Accessory Dwelling Units (ADUs): while it's true that ADUs under 750 square feet are typically exempt from **impact fees**, it's important to note that **impact fees** and **in-lieu (inclusionary housing) fees** are separate and distinct. The latter may still apply depending on the nature of the proposed project. More information regarding impact fee in relation to ADU under 750sf can be found in the updated Fee Schedule for Development,
> adopted_updated_development_impact_fees_-_effective_05052025.pdf

## Effective Date: May 5, 2025

### 1. PARKS AND TRAILS IMPACT FEE

#### a. FEE SCHEDULE:

| Land Use Category | Unit | Impact Fee |
|---|---|---|
| Accessory Dwelling Unit (applies to new livable space exceeding 750 square feet only) | Square Foot | $10.57 |
| Single-family/Townhouse [1] | Square Foot | $10.57 |
| Multi-family Housing [1] | Square Foot | $14.89 |
| Office/Research & Development | Square Foot | $2.25 |
| Industrial | Square Foot | $0.90 |
| Retail | Square Foot | $1.50 |

(1) Applies to rental housing projects ONLY. Existing adopted Quimby Act fees apply to single-family/town house subdivisions and multi-family condominiums.

That said, Mr. Yu, I'd like to extend an invitation to meet with myself and the City's Housing and Economic Development Director, Amy Chen. This would be a great opportunity to walk through your project and review your housing application together. Please submit an application if possible so we can have a clear understanding of your project in writing. We're happy to answer any questions you might have and provide any clarification you need to move forward smoothly.

Please let me know a few dates and times that work for you, and we'll coordinate from there.

Looking forward to connecting.



**Yajaira Morales**
(she/her/ella)
Housing Project Manager
**Phone** (650) 853-3195
**Email** ymorales@cityofepa.org
**Web** www.cityofepa.org/housing
1960 Tate Street, East Palo Alto, CA 94303

** *View City office hours here. The City continues to offer virtual appointments as an alternative to in person meetings. For inquiries or to request an appointment with Housing, please email housing@cityofepa.org or set up a meeting via this link (https://tinyurl.com/appointmentsEPAhousing*
**

**From:** Mark Dinan <mdinan@cityofepa.org>
**Sent:** Tuesday, April 22, 2025 10:25 AM
**To:** Yajaira Morales <ymorales@cityofepa.org>; Wesley Yu
<wyu1229@gmail.com>
**Cc:** Housing <housing@cityofepa.org>; Alvin Jen <ajen@cityofepa.org>; Janet
Nunez-Aguilar <jnunez@cityofepa.org>; Melvin Gaines
<mgaines@cityofepa.org>; Karen Camacho <kcamacho@cityofepa.org>; Amy
Chen <achen@cityofepa.org>
**Subject:** Re: Inclusionary Housing Plan and Marketing forms. (1257 Laurel ave)

Hi Yajaira,

Do these fees apply even if the ADU is less than 750 SF? Someone
pointed this out to me from the California ADU law:

## Fees

### What types of fees are considered impact fees?

Impact fees charged for the construction of ADUs must be determined in accordance with the
Mitigation Fee Act and include any monetary exaction other than a tax or special assessment
that is charged by a local agency in connection with the approval of an ADU for the purpose of
defraying all or a portion of the cost of public facilities relating to the ADU. (Gov. Code, §§
66324, subd. (a); 66000.) A local agency, special district, or water corporation shall not
consider ADUs as a new residential use for the purposes of calculating connection fees or
capacity charges for utilities, including water and sewer services. However, these provisions
do not apply to ADUs that are constructed concurrently with a new single-family home. (Gov.
Code, § 66324, subds. (b), (d).)

### Can impact fees be charged for an ADU less than 750 square feet?

No. An ADU is exempt from incurring impact fees from local agencies, special districts, and
water corporations if it is less than 750 square feet. If an ADU is 750 square feet or larger,
impact fees shall be charged proportionately in relation to the square footage of the ADU to the
square footage of the primary dwelling unit. (Gov. Code, § 66324 subd. (c)(1).) In this specific
instance, impact fees also include Quimby fees specified in Government Code section 66477
(Gov. Code, § 66324 subd. (c)(2).)

For ADUs that include a 150 square-foot exterior expansion, the 150 square feet count
towards the 750 square-foot limit. For example, a 700 square-foot interior conversion ADU with

22

a 150 square-foot exterior expansion for ingress and egress would count as an 850 square-foot ADU for the purposes of calculating fees, thus triggering the proportionate fee requirement of Government Code section 66324, subdivision (c).



**Mark Dinan**

Vice Mayor

**Phone** (650) 440-1080

**Email**   mdinan@cityofepa.org

**Web**   www.cityofepa.org

2415 University Ave

East Palo Alto, CA 94303

---

**From:** Yajaira Morales <ymorales@cityofepa.org>
**Sent:** Thursday, April 17, 2025 4:34 PM
**To:** Mark Dinan <mdinan@cityofepa.org>; Wesley Yu <wyu1229@gmail.com>
**Cc:** Housing <housing@cityofepa.org>; Alvin Jen <ajen@cityofepa.org>; Janet Nunez-Aguilar <jnunez@cityofepa.org>; Melvin Gaines <mgaines@cityofepa.org>; Karen Camacho <kcamacho@cityofepa.org>; Amy Chen <achen@cityofepa.org>
**Subject:** RE: Inclusionary Housing Plan and Marketing forms. (1257 Laurel ave)

Good afternoon, Mr. Yu

Thank you for your message and for sharing your situation. Thank you, Vice Mayor Dinan, for your input.

Unfortunately, the inclusionary housing ordinance is still active, and at this time, it does not provide for alternative compliance or exemption based on financial hardship. While the ordinance allows for options such as in-lieu fees or off-site unit construction, these options include increased inclusionary requirements and do not waive the fee based on personal financial circumstances. 18.37.080 - Developers' Alternative Compliance Options | Code of Ordinances | East Palo Alto, CA | Municode Library. If you choose to pursue any of the alternative compliance options listed in the ordinance, please note that your proposal will require review and approval by the City Council.

I completely understand and empathize with the challenges your family is facing. However, in order to move forward with your project under the ordinance, the following steps will need to be completed:

- Submit the Affordable Housing Plan, and Fair Housing and Marketing Plan – Please complete and submit these plans for review by the Housing division.
- Housing Division Review – The review process may take up to 30 days. If additional information is needed during the review, our team will reach out.
- Approval Notification – Once the Affordable Housing Plan, and Fair Housing and Marketing Plan is approved, the Housing Division will notify the Building Division so your project can proceed.
- Payment of In-Lieu Fee – Please note that the in-lieu fee must be paid before the building permit can be issued.

If you have any further questions or would like assistance during any part of this process, please don't hesitate to reach out.



**Yajaira Morales**
(she/her/ella)
Housing Project Manager
**Phone** (650) 853-3195
**Email** ymorales@cityofepa.org
**Web** www.cityofepa.org/housing
1960 Tate Street, East Palo Alto, CA 94303

*\*\* View City office hours here. The City continues to offer virtual appointments as an alternative to in person meetings. For inquiries or to request an appointment with Housing, please email housing@cityofepa.org or set up a meeting via this link (https://tinyurl.com/appointmentsEPAhousing) \*\**

**From:** Mark Dinan <mdinan@cityofepa.org>
**Sent:** Thursday, April 17, 2025 12:58 PM
**To:** Wesley Yu <wyu1229@gmail.com>; Yajaira Morales <ymorales@cityofepa.org>

<ymorales@cityofepa.org>

**Cc:** Housing <housing@cityofepa.org>; Alvin Jen <ajen@cityofepa.org>; Janet Nunez-Aguilar <jnunez@cityofepa.org>; Melvin Gaines <mgaines@cityofepa.org>

**Subject:** Re: Inclusionary Housing Plan and Marketing forms. (1257 Laurel ave)

HI Wesley,

Thanks for your note.  Speaking with City Manager Melvin Gaines this morning, we will be moving to quickly change our Inclusionary Housing Ordinance to exempt ADUs and Single Family Homes from these fees.  Your project is not the only one impacted by our IZ policies. This might take some time, but in the meantime I support waiving the fee. This is a regressive tax which makes housing more expensive, and the logic behind it is deeply flawed.

The council process will take some time, but I hope we can find a way to move this project forward and not block it with arbitrary and high fees.



**Mark Dinan**

Vice Mayor

**Phone** (650) 440-1080

**Email** **mdinan@cityofepa.org**

**Web** www.cityofepa.org

2415 University Ave

East Palo Alto, CA 94303

---

**From:** Wesley Yu <wyu1229@gmail.com>
**Sent:** Thursday, April 17, 2025 12:37 PM
**To:** Yajaira Morales <ymorales@cityofepa.org>; Mark Dinan <mdinan@cityofepa.org>
**Cc:** Housing <housing@cityofepa.org>; Alvin Jen <ajen@cityofepa.org>; Janet Nunez-Aguilar <jnunez@cityofepa.org>
**Subject:** Re: Inclusionary Housing Plan and Marketing forms. (1257 Laurel ave)

Dear Yajaira,

Thank you for your email.

I was wondering if I could request **alternative compliance** and/or **city council review** regarding this matter?

My plan is to live in the newly built units with my family, which based on my understanding would be "market rate" housing and trigger "the in lieu of fee" of around $55K for my SB9 project.

$55K is a lot of money for the in lieu of fee and my family is struggling to pay bills because of lost jobs / income with industry collapse. I feel that 1) we are low income and would likely qualify for BMR housing anyway, and 2) we are helping the city build much needed housing units, and the in lieu of fee would actually DECREASE affordability of housing.

Can we please have the **city council look into this matter** and **request Alternative Compliance?**

Thanks,

Wesley

On Mon, Apr 14, 2025 at 11:42 AM Yajaira Morales <ymorales@cityofepa.org> wrote:

Good morning, Mr. Yu,

Thank you for taking the time to speak with me earlier today. As discussed, please find below the list of documentation that needs to be submitted for review and approval by the housing department.

Please note that the building review cannot proceed until this portion is completed.

Let me know if you have any questions.

Best regards,

-Yajaira



**Yajaira Morales**
(she/her/ella)
Housing Project Manager
**Phone** (650) 853-3195
**Email** ymorales@cityofepa.org
**Web** www.cityofepa.org/housing
1960 Tate Street, East Palo Alto,
CA 94303

*** View City office hours here. The City continues to offer virtual appointments as an alternative to in person meetings. For inquiries or to request an appointment with Housing, please email housing@cityofepa.org or set up a meeting via this link (https://tinyurl.com/appointmentsEPAhousing ***

> **CAUTION:** This e-mail originated from outside of the organization. Do not click links or open attachments unless you validate the sender and know the content is safe.

> **CAUTION:** This e-mail originated from outside of the organization. Do not click links or open attachments unless you validate the sender and know the content

is safe.

**CAUTION:** This e-mail originated from outside of the organization. Do not click links or open attachments unless you validate the sender and know the content is safe.

**CAUTION:** This e-mail originated from outside of the organization. Do not click links or open attachments unless you validate the sender and know the content is safe.

# EXHIBIT D

---------- Forwarded message ----------
From: **Yajaira Morales** <ymorales@cityofepa.org>
Date: Mon, May 12, 2025 at 4:12 PM
Subject: Follow-Up on May 1st Meeting
To: Wesley Yu <wyu1229@gmail.com>
Cc: Karen Camacho <kcamacho@cityofepa.org>, Amy Chen <achen@cityofepa.org>, Housing <housing@cityofepa.org>

Dear Mr. Yu,

Thank you again for taking the time to meet with me and Amy Chen, Director of Community and Development, on May 1st. We appreciated the opportunity to discuss your project in detail.

Following our meeting, we wanted to clarify a key point regarding the process. It appears there was a mishap on our end, and we realized that your project should not have received entitlements prior to the submission and review of your Inclusionary Housing Plan. We apologize for the oversight.

Please note that your project **will not be eligible** to receive **a building permit** until it has completed the necessary steps with the Housing Team. This includes submission and approval of the required Inclusionary Housing Plan.

As previously discussed, we have clarified the in-lieu fee requirements and the expectations for your housing plan. With those items addressed, we encourage you to submit your Inclusionary Housing Plan at your earliest convenience to avoid any further delays in your project timeline.

If you have any questions or need assistance, please feel free to reach out.

Best regards,



**Yajaira Morales**
(she/her/ella)
Housing Project Manager
**Phone** (650) 853-3195
**Email** ymorales@cityofepa.org
**Web** www.cityofepa.org/housing
1960 Tate Street, East Palo Alto,
CA 94303

*\*\* View City office hours here. The City continues to offer virtual appointments as an alternative to in-person meetings. For inquiries or to request an appointment with Housing, please email housing@cityofepa.org or set up a meeting via this link (https://tinyurl.com/appointmentsEPAhousing).*
*\*\**